SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppard.com
ANNE-MARIE D. DAO, Cal Bar No. 282632
adao@sheppard.com
TERESA R. MORIN, Cal Bar No. 351874
tmorin@sheppard.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:    858.720.8900
Facsimile:    858.509.3691

SAMUEL Z. HYAMS-MILLARD, Cal Bar No. 317941
shyams-millard@sheppard.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947

Attorneys for Defendant
Safelite Group, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL WINSTON and DAVID BUEHLER, individuals, on behalf of themselves, the general public, and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAFELITE GROUP, INC., <br><br> Defendant. | Case No. 3:26-cv-00739-JD <br><br> **DEFENDANT SAFELITE GROUP, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> *Filed concurrently with Declaration of Wynter L. Deagle, Request for Judicial Notice, and [Proposed] Orders* <br><br> Date:    May 21, 2026 <br> Time:    11:00 a.m. <br> Crtrm.:    11 <br><br> Judge:    James Donato <br><br> Trial Date:          Not Set |

Case No. 3:26-cv-00739-JD

DEF'S NTC OF MTN AND MTN TO DISMISS PLTFS' COMPLAINT AND MPA

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 21, 2026, at 11:00 a.m., or on a date more convenient for the Court, before the Honorable James Donato of the United States District Court for the Northern District of California, San Francisco Division, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Safelite Group, Inc. ("Safelite") will and hereby does move this Court for an order pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) dismissing the Class Action Complaint filed by Plaintiffs Michael Winston ("Winston") and David Buehler ("Buehler"), individuals, on behalf of themselves, the general public, and those similarly situated ("Plaintiffs") (the "Complaint") and all causes of action therein for lack of standing and/or failure to state a claim.

Plaintiffs' Complaint should be dismissed pursuant to Rule 12(b)(1) because Plaintiffs have failed to plausibly allege that they "suffered an injury in fact that is concrete, particularized and actual or imminent," which is required to establish Article III standing. Plaintiffs' Complaint should also be dismissed pursuant to Rule 12(b)(6) because Plaintiffs have failed to state a claim upon which relief can be granted. Because they cannot amend their Complaint to overcome their fatal pleading deficiencies, Safelite respectfully requests that the Motion be granted and Plaintiffs' Complaint be dismissed with prejudice.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities contained herein, Declaration of Wynter L. Deagle, Request for Judicial Notice, and accompanying exhibits thereto, all pleadings and other papers on file in this action, and such other matters as may properly come before the Court.

Dated:  March 23, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      _/s/ Wynter L. Deagle_
        WYNTER L. DEAGLE
        ANNE-MARIE D. DAO
        SAMUEL Z. HYAMS-MILLARD
        TERESA R. MORIN

Attorneys for Defendant Safelite Group, Inc.

-1-                                    Case No. 3:26-cv-00739-JD

DEF'S NTC OF MTN AND MTN TO DISMISS PLTFS' COMPLAINT AND MPA

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ i

I.    PLAINTIFFS' ALLEGATIONS ............................................................................. 1

II.   PLAINTIFFS LACK ARTICLE III STANDING. ................................................. 1

III.  ALL OF PLAINTIFFS' CLAIMS FAIL FOR MULTIPLE REASONS ............................ 3

    A.    Plaintiffs Do Not Meet Rule 9(b)'s Heightened Pleading Standard .......................... 4

    B.    The Majority of Plaintiffs' Claims Are Untimely ...................................................... 5

        1.    Equitable Tolling Does Not Apply ................................................................. 6

        2.    Plaintiffs' Claims Are Not Tolled Due To Fraudulent Concealment ............. 8

        3.    The Discovery Rule Does Not Apply. ............................................................. 9

    C.    Plaintiffs' Invasion of Privacy and Intrusion Upon Seclusion Claims Fail. ............ 10

    D.    Plaintiffs' CIPA § 631(a) Wiretapping Claim Fails. ................................................ 10

    E.    Plaintiffs' CIPA § 638.51 Pen Register Claim Fails ................................................ 13

    F.    Plaintiffs' Sixth Claim For Unjust Enrichment Should Be Dismissed ..................... 15

IV.  CONCLUSION ........................................................................................................ 15

TABLE OF AUTHORITIES

Page(s)

Cases

*Allen v. Similasan Corp.*
96 F. Supp. 3d 1063 (S.D. Cal. 2015) ...................................................................................... 8

*Aryeh v. Canon Bus. Sols., Inc.*
55 Cal. 4th 1185 (2013) ............................................................................................................ 8

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .................................................................................................................. 3

*Augustine v. Great Wolf Resorts, Inc.*
No. 23-cv-00281-DMS-DTF, 2024 WL 3450967 (S.D. Cal. July 18, 2024) ................... 12, 13

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .................................................................................................................. 3

*Bradshaw et al. v. Lowe's Cos., Inc.*
No. 25-cv-0742-DMS (MMP), 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ...................... 3

*Brodsky v. Apple Inc.*
445 F. Supp. 3d 110 (N.D. Cal. 2020) ............................................................................... 6, 11

*Brown v. Google LLC*
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .................................................................................. 6

*California Crane Sch., Inc. v. Google LLC*
722 F. Supp. 3d 1026 (N.D. Cal. 2024) ................................................................................. 15

*Cody v. Ring LLC*
718 F. Supp. 3d 993 (N.D. Cal. 2024) .................................................................................. 12

*Dawidzik v. Tesla, Inc.*
No. 25-01982-KK-SPx, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ................................. 3

*de Ayora v. Inspire Brands, Inc.*
No. 25-CV-03645 AGT, 2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) ......................... 4, 5, 8

*DellaSala v. Samba TV, Inc.*
No. 3:25-cv-03470-JSC, 2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) .................................. 3

*Forouzesh v. Starbucks Corp.*
2016 WL 4443203 (C.D. Cal. Aug. 19, 2016) ....................................................................... 15

*Fox v. Ethicon Endo-Surgery, Inc.*
35 Cal. 4th 797 (2005) .............................................................................................................. 9

*Gabrielli v. Haleon US Inc.*
   No. 25-CV-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 9, 2025) (Orrick, J.) ............. 13

*In re Google, Inc. Privacy Policy Litig.*
   58 F. Supp. 3d 968 (N.D. Cal. 2014) ...................................................................................... 10

*Gutierrez v. Converse Inc.*
   2025 WL 1895315 (9th Cir. July 9, 2025) .............................................................................. 11

*Gutierrez v. FriendFinder Networks, Inc.*
   No. 18-cv-05918-BLF, 2019 WL 1974900 (N.D. Cal. May 3, 2019) ...................................... 7

*Hammerling v. Google LLC*
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................................. 10

*Hernandez v. Hillsides, Inc.*
   47 Cal. 4th 272 (2009)........................................................................................................... 10

*Hopkins & Carley, ALC v. Thomson Elite*
   No. 10-cv-05806-LHK, 2011 WL 1327359 (N.D. Cal. Apr. 6, 2011)...................................... 7

*Hunter v. Gates*
   68 F. App'x 69 (9th Cir. 2003)................................................................................................. 8

*I.C. v. Zynga, Inc.*
   600 F. Supp. 3d 1034 (N.D. Cal. 2022) ................................................................................... 3

*Investors Equity Life Holding Co. v. Schmidt*
   195 Cal. App. 4th 1519 (2011)................................................................................................. 8

*Jablon v. Dean Witter & Co.*
   614 F.2d 677 (9th Cir. 1980).................................................................................................... 3

*Jones v. Tonal Sys., Inc.*
   751 F. Supp. 3d 1025 (S.D. Cal. Sept. 30, 2024) ................................................................... 11

*Kearns v. Ford Motor Co.*
   567 F.3d 1120 (9th Cir. 2009)................................................................................................... 4

*Khoja v. Orexigen Therapeutics, Inc.*
   899 F.3d 988 (9th Cir. 2018)..................................................................................................... 6

*Kishnani v. Royal Caribbean Cruises Ltd.*
   No. 25-cv-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ................................... 14

*Kisil v. Illuminate Educ., Inc.*
   No. 23-4114, 2025 WL 2589000 (9th Cir. Sept. 8, 2025) .................................................. 2, 3

*Klein v. Facebook, Inc.*
   580 F. Supp. 3d 743 (N.D. Cal. 2022) ................................................................................... 15

*Kline v. Iovate Health Sciences*
   No. 3:15-cv-02387, 2017 WL 1135580 (S.D. Cal. Mar. 27, 2017) ........................................ 5

*Konop v. Hawaiian Airlines, Inc.*
   302 F.3d 868 (9th Cir. 2002) .............................................................................................. 11, 12

*Licea v. Am. Eagle Outfitters, Inc.*
   659 F. Supp. 3d 1072 (C.D. Cal. 2023) ..................................................................................... 12

*Low v. LinkedIn Corp.*
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..................................................................................... 10

*In re Meta Pixel Tax Filing Cases*
   793 F. Supp. 3d 1147 (N.D. Cal. 2025) (Pitts, J.) .................................................................... 13

*Mikulsky v. Bloomingdale's, LLC*
   713 F. Supp. 3d 833 (S.D. Cal. 2024) ........................................................................................ 11

*Mitchener v. CuriosityStream, Inc.*
   No. 25-cv-01471, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) .............................................. 14

*Neubronner v. Milken*
   6 F.3d 666 (9th Cir. 1993) ............................................................................................................ 5

*O'Connor v. Boeing N. Am.*, Inc.
   311 F.3d 1139, 1147 (9th Cir. 2002) ............................................................................................ 9

*Pemberton v. Restaurant Brands Int'l, Inc.*
   No. 25-cv-03647, 2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) ......................................... 6, 8

*Phillips v. U.S. Customs and Border Protection*
   74 F.4th 986 (2023) .................................................................................................................... 10

*Popa v. Microsoft Corp.*
   153 F.4th 784 (9th Cir. 2025) .................................................................................................. 2, 3

*Pouncil v. Tilton*
   704 F.3d 568 (9th Cir. 2012) ........................................................................................................ 5

*Price v. Converse, Inc.*
   No. 2:24-cv-08091-FLA (Ex), 2025 WL 3295119 (C.D. Cal. Sept. 30, 2025) ......................... 3

*Price v. Headspace, Inc.*
   No. 24STCV19921, 2025 WL 1237977 (Cal. Super. Ct. Apr. 01, 2025) ............................... 14

*Ramirez v. Bank of America, N.A.*
   634 F. Supp. 3d 733 (N.D. Cal. 2022) ..................................................................................... 4, 5

*Rodriguez v. Google LLC*
   2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ............................................................................. 12

*Ryan v. Ass'n of Apartment Owners of Waikiki Landmark by & through Bd. of Directors*
No. 25-92, 2025 WL 3022315 (9th Cir. Oct. 29, 2025) .............................................................. 9

*Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*
9 Cal. 5th 710 (2020) ....................................................................................................................... 6

*In re Saldana*
122 F.4th 333 (9th Cir. 2024) ........................................................................................................ 14

*Shah v. MyFitnessPal, Inc.*
No. 25-cv-04430-PCP, 2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ....................................... 5

*Shah v. Politico LLC*
No. 25-cv-0513-NW, 2026 WL 323269 ....................................................................................... 8

*Smith v. Maryland*
442 U.S. 735 (1979) ........................................................................................................................ 15

*Tavernetti v. Superior Court*
22 Cal. 3d 187 (1978) ..................................................................................................................... 11

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2021) ................................................................................................................... 2, 3

*United States v. New York Tel. Co.*
434 U.S. 159 (1977) ........................................................................................................................ 15

*Valenzuela v. Keurig Green Mountain, Inc.*
674 F. Supp. 3d 751 (N.D. Cal. 2023) ................................................................................. 11, 12

*Vess v. Ciba-Geigy Corp. USA*
317 F.3d 1097 (9th Cir. 2003) ........................................................................................................ 4

*Williams v. What If Holdings, LLC*
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........................................................................... 11

*Yoon v. Lululemon USA, Inc.*
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................................................................................... 11

Statutes

Cal. Penal Code § 629.50 ................................................................................................................ 14

Cal. Penal Code § 629.50(a)(1)–(8) ............................................................................................... 14

Cal. Penal Code § 631 ..................................................................................................................... 14

Cal. Penal Code § 631(a) ................................................................................................................ 11

Cal. Penal Code § 638.50(b) ........................................................................................................... 13

Cal. Penal Code § 638.51(a).................................................................................................. 13

Cal. Penal Code § 638.52 ....................................................................................................... 14

Cal. Penal Code § 638.53 ....................................................................................................... 14

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs allege nothing more than that they visited Safelite's publicly accessible website, www.safelite.com (the "Website"), and—*at most*—"browsed" for information about automotive glass repair and replacement services. They do not allege that they entered any sensitive personal, medical, or financial information into the Website. Nor do they allege that any confidential data was collected or disclosed. Plaintiffs' attempt to dress up routine browsing activity as "Private Communications" cannot obscure the fundamental deficiency underlying all of their claims: Plaintiffs do not allege that any sensitive information was collected or disclosed.

Plaintiffs' claims fail for multiple reasons. First, they lack Article III standing because they have not pled a concrete, particularized injury. Second, their claims all sound in fraud and lack the particularity required by Federal Rule of Civil Procedure 9(b). Third, nearly all of their claims are time-barred. Fourth, Plaintiffs fail to plead the substantive elements of their claims. Finally, unjust enrichment is not a cause of action under California law and, because all of Plaintiffs' substantive claims fail, they cannot establish any entitlement to recover on an unjust enrichment theory. Accordingly, the Complaint should be dismissed.

## I.    PLAINTIFFS' ALLEGATIONS

Plaintiffs allege that Safelite's Website included "resources and programming scripts from third parties that cause those parties to place cookies and other similar tracking technologies on visitors' browsers and devices and/or transmit cookies along with user data." *See* Compl. ¶ 2. According to Plaintiffs, these cookies are capable of collecting "Private Communications," which are defined to include browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behavior, device information, referring URLs, session information, user identifiers, and geolocation data. *Id.* ¶ 30. Plaintiffs further allege that after they adjusted the settings in Safelite's Privacy Preferences window on the Website to reject "Targeting Cookies," those cookies continued to be used and placed while they "browse[d] the Website." *Id.* ¶¶ 124–128, 134–138.

## II.    PLAINTIFFS LACK ARTICLE III STANDING.

Plaintiffs cannot establish Article III standing because they do not plausibly allege that the

-1-                                Case No. 3:26-cv-00739-JD

DEF'S NTC OF MTN AND MTN TO DISMISS PLTFS' COMPLAINT AND MPA

information that the cookies allegedly collected was sensitive enough to implicate a cognizable privacy interest. Article III standing requires that a plaintiff "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal citations and quotations omitted). Accordingly, the Court should dismiss the Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

In analyzing standing, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. 2025) (quoting *TransUnion*, 594 U.S. at 419–22). Claims alleging a privacy harm "must 'be benchmarked' to one of four distinct privacy torts": intrusion upon seclusion, appropriation of another person's name or likeness, public disclosure of private facts, and defamation/false light. *Kisil v. Illuminate Educ., Inc.*, No. 23-4114, 2025 WL 2589000, at *1 (9th Cir. Sept. 8, 2025) (citing *Popa*, 153 F.4th at 788).

In *Popa,* the Ninth Circuit affirmed dismissal of privacy claims for lack of standing, holding that a defendant's tracking on a retail website does not cause "any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." 153 F.4th at 791. The *Popa* plaintiff alleged that her privacy was invaded because the defendant employed cookies during her visit to a pet supply website to secretly collect information including "mouse movements," "screen swipes," "text inputted by the user," and "how far down a webpage a user scrolls." *Id*. at 786. The Ninth Circuit held that the plaintiff lacked standing because she "identifie[d] no embarrassing, invasive, or otherwise private information collected." *Id*.

Plaintiffs' allegations are similarly deficient. Plaintiffs allege nothing more than collection of Website interactions—browsing information about automotive glass services and pricing. *See* Compl. ¶¶ 121, 131, 132. They "do[] not explain how the tracking of [their] interactions with the [Website] caused [them] to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Popa*, 153 F.4th at 791.

DEF'S NTC OF MTN AND MTN TO DISMISS PLTFS' COMPLAINT AND MPA

Even where information is "illegally obtained," there must be "more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury." *Id.* at 793; *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022) ("[C]ourts must examine the nature of the specific information at issue to determine whether privacy interests were implicated at all. Otherwise, every data breach (or any situation in which one loses control of information) would confer standing, regardless of whether private information is exposed."). Thus, even if the use of "tracking software *could* be offensive in particular circumstances (e.g., involving sensitive medical or financial information)," if the nature of the information tracked was not sensitive, there is no standing to sue. *Popa*, 153 F.4th at 791. Plaintiffs cannot simply point to their browsing activities, label them "Private Communications," and assert a broad, amorphous privacy interest. Such a "high level of generality" does "not align with the analysis adopted in *TransUnion*." *Popa*, 153 F.4th at 792; *see also Kisil*, 2025 WL 2589000, at *1. Following the Ninth Circuit's decision in *Popa*, courts have dismissed privacy claims for lack of Article III standing because data concerning the website interactions is not sufficiently sensitive to allege a concrete injury. *See, e.g.*, *Price v. Converse, Inc.*, No. 2:24-cv-08091-FLA (Ex), 2025 WL 3295119, at *3 (C.D. Cal. Sept. 30, 2025); *Dawidzik v. Tesla, Inc.*, No. 25-01982-KK-SPx, 2025 WL 3786963, at *4 (C.D. Cal. Dec. 29, 2025); *DellaSala v. Samba TV, Inc.*, No. 3:25-cv-03470-JSC, 2025 WL 3034069, at *5 (N.D. Cal. Oct. 30, 2025); *Bradshaw et al. v. Lowe's Cos., Inc.*, No. 25-cv-0742-DMS (MMP), 2025 WL 3171740, at *5–6 (S.D. Cal. Nov. 12, 2025). The same result is dictated here.

### III.    ALL OF PLAINTIFFS' CLAIMS FAIL FOR MULTIPLE REASONS

The Complaint fails to state any claims. Under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.; Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, dismissal under Rule 12(b)(6) based on the statute of limitations is proper "[i]f the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co., 61*4 F.2d 677, 682 (9th Cir. 1980).

/ / /

### A.  **Plaintiffs Do Not Meet Rule 9(b)'s Heightened Pleading Standard**

Plaintiffs' claims all sound in fraud and must satisfy Rule 9(b)'s heightened pleading standard. Where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct," all claims are subject to Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04, 1106 (9th Cir. 2003). Here, Plaintiffs allege that Safelite's Privacy Policy and Privacy Preferences window failed to disclose that Targeting Cookies would continue to be used after a user opted out, and that Safelite's representations regarding its cookie practices "were false." *See* Compl. ¶¶ 36–41. This alleged deception is the basis for every claim. Accordingly, Rule 9(b) applies to all of them. *See de Ayora v. Inspire Brands, Inc.*, No. 25-CV-03645 AGT, 2025 WL 3707561, at *3 (N.D. Cal. Dec. 22, 2025) (applying Rule 9(b) to all claims based on allegations that defendant falsely represented users could decline cookies).

Rule 9(b) requires that fraud allegations "be accompanied by 'the who, what, when, where and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Here, Plaintiffs fail to plead specific factual allegations detailing *when and how they* were allegedly defrauded. Plaintiffs allege only that they visited the Website "on one or more occasions during the last four years," with Buehler adding that he visited on an unspecified date "in 2023." Compl. ¶¶ 121, 131. The Complaint identifies a Privacy Policy last modified in June 2023 and alleges "***on information and belief***" that "this version was in effect at the time of Plaintiffs' rejections of cookies on the Website." *Id.* ¶ 34 & n.1 (emphasis added). Plaintiffs further allege they interacted with the Privacy Preferences window but do not allege that the representations in the window remained the same during all of their visits. *Id.* ¶ 34.

These allegations are fatally deficient. "Allegations of fraud based on information and belief do not satisfy Rule 9(b)." *Ramirez v. Bank of America, N.A.*, 634 F. Supp. 3d 733, 740 (N.D. Cal. 2022). Because Winston alleges he visited during the last four years, Buehler alleges he visited the Website "in 2023" and the Privacy Policy was last modified in June 2023, their allegations do not foreclose that they visited before June 2023—and thus saw a different Privacy Policy. Nor does Buehler identify which day out of 365 he visited. Safelite periodically updates its Privacy Policy, and Plaintiffs admit that the June 2023 version was no longer in effect or posted

on the Website as of the filing of the Complaint. Compl. ¶ 34 n.1.

While the information-and-belief rule "may be relaxed with respect to matters within the opposing party's knowledge," *Ramirez*, 634 F. Supp. 3d at 740, that exception does not apply here. The relevant knowledge (when they visited the Website) lies entirely with Plaintiffs. Safelite cannot determine which versions of the Privacy Policy or Privacy Preferences window Plaintiffs saw or what representations those versions contained. Courts have dismissed materially identical allegations for the same reason. *See de Ayora*, 2025 WL 3707561, at *4 (holding that where the class period "stretche[d] four years" and "cookie banners were changed during the accused period," the plaintiffs failed to give notice of the "when" or the "where" under Rule 9(b)); *Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-PCP, 2026 WL 216334, at *9 (N.D. Cal. Jan. 27, 2026) (holding that allegations of website visits "in the last four years" failed Rule 9(b) because that "level of generality fails to provide [the defendant] with notice of the misconduct alleged."). Plaintiffs' complete lack of specificity fails to "give [D]efendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). Accordingly, all of Plaintiffs' claims should be dismissed.

### B. The Majority of Plaintiffs' Claims Are Untimely

Plaintiffs' CIPA, invasion of privacy, and intrusion upon seclusion claims are time barred. As discussed above, Winston alleges only that he visited the Website on "one or more occasions during the last four years." Compl. ¶ 121. By failing to provide any specificity regarding his visits, Winston has alleged a set of facts where his claims are time-barred because they accrued earlier than three years before filing on January 23, 2026. *See Kline v. Iovate Health Sciences,* No. 3:15-cv-02387, 2017 WL 1135580, at *3 (S.D. Cal. Mar. 27, 2017) (dismissing claims with three-year statute of limitations because allegations that plaintiff purchased products "within the last four years" established the claims "could be time barred").

Buehler adds that he visited the Website sometime in 2023. Compl. ¶ 131. Accordingly, Buehler's claims accrued, and the statutes of limitations began to run no later than December 31, 2023. *See Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012). As a result, the statute of

limitations for his CIPA claims expired on December 31, 2024 and the statute of limitations for his invasion of privacy and intrusion upon seclusion claims expired on December 31, 2025.[1] Because the Complaint was not filed until January 23, 2026, their claims for violations of CIPA, invasion of privacy and intrusion upon seclusion are time barred unless the statutes of limitation were tolled. They were not.

### 1.    Equitable Tolling Does Not Apply

Winston fails to plead any facts that would support equitable tolling of his claims. Buehler also is not entitled to equitable tolling because his repeated delays prevent him from plausibly alleging the reasonable and good faith conduct required. "Where applicable, the doctrine will suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." *Pemberton v. Restaurant Brands Int'l, Inc.*, No. 25-cv-03647, 2025 WL 3268404, at *6 (N.D. Cal. Nov. 24, 2025). "A plaintiff seeking to invoke California's equitable tolling doctrine must demonstrate: (1) timely notice, (2) lack of prejudice to the defendant, and (3) reasonable and good faith conduct by the plaintiff." *Id.* (citing *Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*, 9 Cal. 5th 710, 724 (2020)). Plaintiffs' conduct "must be *objectively* reasonable and subjectively in good faith." *Id.* (emphasis added). It was not.

On February 9, 2024, Buehler served a demand letter on Safelite (the "Demand Letter") that "notified" Safelite of Buehler's allegations regarding continued cookie use and placement after he rejected targeting cookies, the potential claims against Safelite, and Buehler's intent "to pursue his claims on behalf of himself and other similarly situated class members." Compl. ¶ 16[2]. Thereafter, Buehler repeatedly delayed in pursuing his claims. Buehler first delayed in initiating arbitration. Without explanation, he waited more than five months—160 days—until July 18, 2024, to file his Complaint and Demand for Arbitration with AAA. *Id.* ¶ 18 & Ex. A. That was not

---

[1] CIPA claims are subject to a one-year statute of limitations. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020). Invasion of privacy and intrusion upon seclusion claims have a two-year statute of limitations. *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021).

[2] Because Plaintiffs pled the existence and contents of the February 9, 2024 Demand Letter, it has been incorporated by reference into the Complaint and may be considered in ruling on Safelite's motion to dismiss. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). To the extent that the Court determines otherwise, Safelite requests that the Court take judicial notice of the Demand Letter. *See* Request for Judicial Notice ("RJN") at 1.

the last of Buehler's unreasonable delay.

After filing for arbitration, Buehler sought a declaration that none of his claims were subject to arbitration. *See* Compl., Ex. B at 2. From the beginning, Buehler had contended his claims were not subject to arbitration. His initial demand letter informed Safelite that if it did not accede to his demands "Plaintiff may (and will) initiate a class action and pursue all available damages." RJN, Ex. A at 10 n.3. His AAA demand stated he was filing the demand "without waiver of any right or argument, including without limitation, that Claimant did not assent to [Safelite's] arbitration agreement…" Compl., Ex. A at p. 1 n.1. Despite intending to seek a declaration of non-arbitrability, and knowing the statute of limitations was running, at no point did Buehler seek to file suit to preserve his statute of limitations on claims that were not arbitrable while staying in favor of arbitration. *See Gutierrez v. FriendFinder Networks, Inc.*, No. 18-cv-05918-BLF, 2019 WL 1974900, at *11 (N.D. Cal. May 3, 2019) (staying the case pending the arbitrator's decision on arbitrability "so that th[e] statute of limitations will not run on claims that may ultimately not be arbitrable"); *Hopkins & Carley, ALC v. Thomson Elite*, No. 10-cv-05806-LHK, 2011 WL 1327359, at *8 (N.D. Cal. Apr. 6, 2011) (conditioning dismissal on the parties stipulating to tolling the statute of limitations if the arbitrator determines that any claims must be heard by the court).

The arbitration was pending for 307 days. On May 21, 2025, the arbitrator issued an order granting Buehler's motion, finding no arbitration agreement between the parties, and concluding that she did not have jurisdiction to decide Buehler's claims. Compl. ¶ 21 & Ex. B at 2. Buehler then inexplicably waited more than eight additional months—247 days—to file the present lawsuit on January 23, 2026. Assuming Buehler visited the website on December 31, 2023, Buehler delayed filing the Complaint for at least 754 days (over two years). And even assuming his claims accrued no earlier than the date he sent the Demand Letter, Buehler delayed filing the Complaint for 714 days (nearly two years).

When faced with similar unreasonable and unexplained delays following service of a demand letter and/or after dismissal of an arbitration (or both)—as here—courts have repeatedly determined that equitable tolling is inappropriate and that the plaintiffs' CIPA claims were

untimely. *de Ayora*, 2025 WL 3707561, at *6 ("Defendants argue that Wiley presented no good reason for this delay after the close of arbitration. The Court agrees. Wiley pleads no facts in her complaint, nor does she argue in opposition, that waiting a further eight months to file or join suit after receiving an arbitration decision can support a claim of good faith and reasonableness.") (citation omitted); *Pemberton*, 2025 WL 3268404, at *6 ("As Plaintiff does not allege facts that plausibly support an inference of good faith and reasonable conduct in waiting nine and a half months after the arbitrator's decision to file this complaint, Plaintiff has not alleged equitable tolling on his CIPA claims."); *Shah v. Politico LLC*, No. 25-cv-0513-NW, 2026 WL 323269, at *6 (refusing to apply equitable tolling when plaintiff waited four months between sending a demand letter and initiating arbitration, waited another six months between receiving an arbitrator's finding of non-arbitrability and seeking to confirm that same finding, and then waited still longer before finally filing in federal court).

Here, arbitration was a deliberate litigation tactic intended to pressure Safelite into settlement while delaying the filing of their claims in court. Buehler delayed prior to filing for arbitration, during arbitration while seeking a declaration of non-arbitrability and then delayed even longer after it was dismissed at his request. Plaintiffs have failed to allege any facts demonstrating that they acted reasonably and in good faith—both of which are necessary to support equitable tolling. Accordingly, their claims are untimely.

**2.      Plaintiffs' Claims Are Not Tolled Due To Fraudulent Concealment**

"The doctrine of fraudulent concealment tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013). "This doctrine requires the plaintiff (1) plead with particularity the facts giving rise to the fraudulent concealment claim and (2) demonstrate that he or she used due diligence in an attempt to uncover the facts." *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1071 (S.D. Cal. 2015) (citing *Hunter v. Gates*, 68 F. App'x 69, 71 (9th Cir. 2003)). In other words, a plaintiff must allege both the elements of fraud and "an excuse for late discovery of the facts." *Investors Equity Life Holding Co. v. Schmidt*, 195 Cal. App. 4th 1519, 1533 (2011) (internal quotation marks and citation omitted). A failure to allege fraudulent concealment with

particularity under Rule 9(b) is automatically a failure to plausibly allege tolling through fraudulent concealment. *Ryan v. Ass'n of Apartment Owners of Waikiki Landmark by & through Bd. of Directors*, No. 25-92, 2025 WL 3022315, at *1 (9th Cir. Oct. 29, 2025). As discussed above, Plaintiffs have failed to plead fraud with particularity because they do not detail when the allegedly false representations were viewed, how the falsity of the representations was concealed by Safelite, or facts showing how Plaintiffs acted diligently to attempt to uncover the facts. Their statute of limitations claims cannot be tolled by fraudulent concealment.

### 3.    The Discovery Rule Does Not Apply.

To rely on the discovery rule, which postpones accrual of a claim until the plaintiff has, or should have, inquiry notice of the claim, a "plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (citation omitted)(emphasis in original). Plaintiffs plead neither. Plaintiffs allege that they were entirely unaware of the facts until they "learned of Defendant's privacy violations from their counsel." Compl. ¶ 15. Even if Plaintiffs learned of the facts giving rise to their claims from counsel, they fail to allege *when* that occurred or which of their visits to the Website counsel identified as violations.

Further, Plaintiffs provide no detail regarding their inability to discover their claims. In assessing the sufficiency of the allegations of delayed discovery, the burden is on the plaintiff to show diligence. *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal.4th at 808. Further, a plaintiff is "held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her." *O'Connor v. Boeing N. Am.*, Inc., 311 F.3d 1139, 1147 (9th Cir. 2002). Here, Plaintiffs fail to allege any diligence and, beyond stating they did not have technical expertise to personally test the Website in a specific way, provide no information regarding why they could not have discovered their claims earlier despite reasonable diligence. These allegations are insufficient to allege the application of the discovery rule.

///

## C. **Plaintiffs' Invasion of Privacy and Intrusion Upon Seclusion Claims Fail.**

Plaintiffs' claims for invasion of the California Constitutional right to privacy and common law intrusion upon seclusion also fail. These claims require that Plaintiffs plead facts establishing they had a reasonable expectation of privacy in the information collected and that the collection of that information was highly offensive to a reasonable person. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009). Plaintiffs cannot satisfy these requirements because the information about browsing a commercial website for automobile-glass repair is not sensitive.

Plaintiffs do not allege that they typed anything into any field, clicked on any links, navigated to specific pages, scheduled service, or provided any personal information at all. Courts have consistently held that, absent the unauthorized collection of sensitive information, this type of website browsing does not give rise to a reasonable expectation of privacy. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022) *(*no reasonable expectation of privacy "when the data collection is within users' common-sense expectation or when the information is not sensitive."). For this same reason, the collection of Plaintiffs' information, even if unauthorized, is not "highly offensive." *See, e.g.*, *Phillips v. U.S. Customs and Border Protection,* 74 F.4th 986, 995-96 (2023) (collection of "names, birthdays, social security numbers, occupations, addresses, social media profiles, and political views and associations" not "so sensitive that another's access to that information 'would be highly offensive to a reasonable person'"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (holding disclosure of user's browsing history, URLs, and unique ID was not highly offensive). This is true even where the collection of information is a breach of the defendant's privacy policy. *See In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987-88 (N.D. Cal. 2014) (disclosure of personal information, browsing habits, search queries, ad responses, demographic information, and preferences in violation of defendant's privacy policy was not highly offensive).

## D. **Plaintiffs' CIPA § 631(a) Wiretapping Claim Fails.**

Penal Code § 631(a) prohibits three activities: (i) intentional wiretapping (Clause 1); (ii) willfully attempting to learn the contents or meaning of a communication in transit over a wire (Clause 2); and (iii) using or attempting to use or communicate information obtained as a result of

engaging in either of the previous two activities (Clause 3). *See Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (1978). Section 631(a) also imposes liability, under Clause 4, upon anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the" acts described in the first three clauses. Cal. Penal Code § 631(a). Plaintiffs appear to assert their claim under this fourth, aiding-and-abetting prong. *See* Compl. ¶¶ 182–184. To establish liability under this theory, Plaintiffs must first plausibly allege that a third party committed an underlying violation of one of the first three clauses of § 631(a). *See Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022). They do not.

**Clause 1**: Courts have repeatedly held that the first clause of § 631(a) does not apply to the internet or online conduct. *See Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 755 (N.D. Cal. 2023).

**Clause 2**: The second clause is violated only where a third party "reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit." *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1032-1033, (S.D. Cal. Sept. 30, 2024). Thus, the Third Parties must have: (1) read or learned the content of communications; (2) while those communications were en route to the intended recipient. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Plaintiffs fail to allege these essential elements.

Plaintiffs have not alleged facts showing that the "contents" of their communications were intercepted. "Contents" under CIPA is limited to the intended message conveyed by the communication. Although Plaintiffs define the data at issue as "Private Communications," courts have consistently held that this type of data —browsing history, page views, and similar information—is not "contents." *See Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (holding website interactions such as "button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, network requests, and more" are not contents); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (holding that browsing data, such as "keystrokes, mouse clicks, pages viewed" are not "contents"); *Brodsky*, 445 F. Supp. 3d at 127 (holding "user names, passwords, and geographic location information" are not contents).

Plaintiffs' conclusory assertion that unspecified "user input data" could be collected is also unavailing. Even assuming such data could constitute "contents," Plaintiffs fail to allege that they personally entered any such information into the Website. *See Augustine v. Great Wolf Resorts, Inc.*, No. 23-cv-00281-DMS-DTF, 2024 WL 3450967, at *5 (S.D. Cal. July 18, 2024) (allegations that cookies could collect information "including the pages and content they viewed, their scroll movements, words and text typed even if not fully entered, copy and paste actions, any search terms (even if not fully entered), mouse clicks and movements, keystrokes, and all other information related to the visit" failed to allege that the contents of plaintiff's communications were intercepted).

Plaintiffs also fail to plead facts showing that the contents of their communications were intercepted while in transit. As the Ninth Circuit has made clear, this requires interception and acquisition of the communication **during transmission**. *See Konop*, 302 F.3d at 878. The Complaint contains no factual allegations explaining how a third party acquired, let alone read or attempted to read, any of Plaintiffs' communications during transmission. Plaintiffs merely parrot the statutory language and rely on conclusory assertions that an interception occurred. California courts have repeatedly found that this type of conclusory allegation is insufficient to allege a violation of Clause 2. *See Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1084 (C.D. Cal. 2023) ("bare allegations that 'the third party ... secretly intercept[s] (during transmission and in real time)' is conclusory and does not allege specific facts as to how or when the interception takes place"); *Valenzuela*, 674 F. Supp. 3d at 758 (allegation that code allowed third party to "secretly intercept in real time" was insufficient); *Rodriguez v. Google LLC*, 2022 WL 214552, at *1 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit.").

**Clause 3:** Because Plaintiffs "failed to allege…violation of the first or second clauses, [they have] also failed to plead a violation of the third clause." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024).

Because there is no predicate violation, Plaintiffs have also failed to plausibly allege their derivative aiding-and-abetting claim against Safelite under Clause 4. *See id.* at 1003 (dismissing

claim under Section 631(a)'s fourth clause where plaintiff failed to establish "underlying third-party violation" of preceding clauses); *Augustine*, 2024 WL 3450967, at *8 (same).

### E. Plaintiffs' CIPA § 638.51 Pen Register Claim Fails

Plaintiffs' § 638.51 claim fails because Plaintiffs have pleaded themselves out of it. Cal. Penal Code § 638.51(a) prohibits "install[ing] or us[ing] a pen register . . . without first obtaining a court order" under specified circumstances. CIPA defines a pen register as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, ***but not the contents of a communication***." Cal. Penal Code § 638.50(b) (emphasis added).[3] Plaintiffs allege that "[t]he Third-Parties' cookies and the corresponding software code. . .  are each 'pen registers' because they . . . 'capture[d]' the 'routing, addressing, or signaling information'—including, the IP address and user-agent information—from the electronic communications transmitted by" Plaintiffs' devices. Compl. ¶ 195. Plaintiffs simultaneously allege that those same cookies collect and decode contents of communications. *See* Compl. ¶¶ 47, 50, 183-184, 197. These allegations—that cookies collect both routing information and content—necessarily remove them from the definition of a "pen register." Although two courts have reached a contrary conclusion,[4] this Court should reject that analysis for at least four reasons: (1) the plain language of CIPA's pen register definition excludes any device that records content; (2) the rule against surplusage confirms this reading; (3) California's broader privacy statutory scheme reinforces the distinction between pen registers (which do not collect contents) and wiretaps (which do); and (4) well-established Fourth Amendment jurisprudence supports this interpretation.

***First***, the plain statutory text compels this result. The pen register definition follows the structure "a device or process that does A, but not B." Cal. Pen. Code § 638.50(b). The phrase "***but not***" is exclusionary language creating a definitional boundary: a device that does both A ***and*** B

---

[3] For simplicity, Safelite will refer to "dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted" as "routing information."

[4] *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025) (Pitts, J.); *Gabrielli v. Haleon US Inc.*, No. 25-CV-02555-WHO, 2025 WL 2494368, at *12 (N.D. Cal. Aug. 9, 2025) (Orrick, J.)

falls outside the definition. Courts interpreting the materially identical "trap and trace device" definition—which contains the same "but not the contents of communications" language have reached this conclusion. *See Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) (holding that software was not a "trap and trace device" because plaintiff alleged it collected contents of communications); *Mitchener v. CuriosityStream, Inc.*, No. 25-cv-01471, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) (same); *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *2-3 (Cal. Super. Ct. Apr. 01, 2025) (sustaining demurrer and finding "the crucial distinction from other devices" is that a pen register is "designed to capture information about the communication, but not the content of the communication itself")(emphasis omitted).

**_Second_**, interpreting the statute to encompass a device that records both contents and routing information would violate the rule against surplusage. *See In re Saldana*, 122 F.4th 333, 342 (9th Cir. 2024). If any device that collects routing information qualifies as a pen register regardless of whether it also collects content, the phrase "but not the contents of a communication" performs no limiting function and is entirely superfluous. Had the Legislature intended that result, it would have defined a pen register simply as "a device that records dialing, routing, addressing, or signaling information" and stopped there. Instead, it affirmatively specified that content recording is excluded.

**_Third_**, California's broader privacy statutory scheme reinforces this reading. California treats the interception of contents (Cal. Penal Code §§ 629.50, 631) distinctly from the collection of routing information via pen registers (Cal. Penal Code §§ 638.52–53). This distinction is meaningful: to wiretap communications, the Attorney General or district attorney must submit an extensive sworn application to the presiding superior court judge demonstrating, inter alia, that normal surveillance techniques have failed. *See* Cal. Penal Code § 629.50(a)(1)–(8). By contrast, a peace officer may apply to any magistrate for a pen register order, and the application may even be made orally. Cal. Penal Code §§ 638.52–53. A pen register is easier to obtain precisely because it does not collect contents. Collapsing these definitions would undermine the protections California law embeds in this distinction.

*Fourth*, this reading is consistent with well-established Fourth Amendment jurisprudence. The Supreme Court has recognized that pen registers have "limited capabilities" and "do not acquire the contents of communications," and on that basis held that their use does not implicate a legitimate expectation of privacy. *Smith v. Maryland*, 442 U.S. 735, 741 (1979); *see also United States v. New York Tel. Co.*, 434 U.S. 159, 167 (1977) ("[A] law enforcement official could not even determine from the use of a pen register whether a communication existed."). This well-established understanding confirms the only reading supported by the statutory text: a pen register under CIPA does not include a device that collects the contents of communications, even if it also collects routing information.

Accordingly, Plaintiffs' pen register claim should be dismissed because the Third-Party cookies, as alleged, fall outside the statutory definition of a "pen register" under CIPA.

### F.   **Plaintiffs' Sixth Claim For Unjust Enrichment Should Be Dismissed**

Under California law, there is no cause of action for unjust enrichment. *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 829 (N.D. Cal. 2022) (collecting cases). Even if construed as a quasi-contract claim for restitution—where a benefit is unjustly conferred through mistake or fraud—Plaintiffs must identify the specific benefit received and a sufficiently pled and actionable misrepresentation. *See California Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1042 (N.D. Cal. 2024). They have not. Further, because all of Plaintiffs' substantive claims fail, they "ha[ve] no viable basis for invoking entitlement to . . . unjust enrichment." *Forouzesh v. Starbucks Corp.*, 2016 WL 4443203, at *5 (C.D. Cal. Aug. 19, 2016). Dismissal with prejudice is warranted.

### IV.   **CONCLUSION**

Because Plaintiffs rely on vague and conclusory statements, rather than concrete facts and legal theories, their Complaint must be dismissed.

/ / /

/ / /

/ / /

/ / /

/ / /

Dated:  March 23, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        _____
                    */s/ Wynter L. Deagle*
                 WYNTER L. DEAGLE
                 ANNE-MARIE D. DAO
               SAMUEL Z. HYAMS-MILLARD
                 TERESA R. MORIN

            Attorneys for Defendant Safelite Group, Inc.

DEF'S NTC OF MTN AND MTN TO DISMISS PLTFS' COMPLAINT AND MPA