**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
  todd@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
  rajiv@gutridesafier.com 100 Pine Street,
Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WINSTON and DAVID BUEHLER, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAFELITE GROUP, INC.,<br><br>Defendant. | CASE NO. 3:26-cv-00739-JD<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS<br><br>Date:          May 21, 2026<br>Time:          11:00 a.m.<br>Courtroom:  11<br><br>Hon. James Donato |

- i -

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   STATEMENT OF FACTS .................................................................................... 2

III.  LEGAL STANDARD............................................................................................ 3

IV.   ARGUMENT......................................................................................................... 3

      A.    Plaintiffs Plead a Concrete Injury. ............................................................ 3

      B.    Plaintiffs' Allegations Satisfy Rule 9(b), to the Extent It Applies. ........... 5

      C.    Plaintiffs' Claims Are Timely.................................................................... 7

      D.    Plaintiffs Adequately Plead Common Law Privacy Claims. .............................. 10

      E.    Plaintiffs Adequately Allege Violations of CIPA § 631(a). ............................... 11

      F.    Plaintiffs Adequately Allege Violations of CIPA § 638.51................................. 13

      G.    Plaintiffs' Unjust Enrichment Claim May Proceed. .......................................... 14

V.    CONCLUSION..................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................ 3

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ................................................................................ 15

*Beheshta Mahboob v. Educ. Credit Mgmt. Corp.*,
No. LA CV21-08585-JAK-GJS, 2023 U.S. Dist. LEXIS 245751 (C.D. Cal. Dec. 20, 2023) ...................................................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................ 3

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .............................................................. 11, 12

*Calhoun v. Google LLC*,
526 F.Supp.3d 605 (N.D. Cal. 2021) .................................................................... 11

*Cervantes v. City of San Diego*,
5 F.3d 1273 (9th Cir. 1993) ................................................................................ 8, 10

*Doe v. Fullstory*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .................................................................. 8

*Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. 2025) ..................................... 13

*Durnford v. MusclePharm Corp.*,
907 F.3d 595 (9th Cir. 2018) .................................................................................. 7

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .................................................................................. 3

*Fanucci v. Allstate Ins. Co.*, 638 F. Supp. 2d 1125 (N.D. Cal. 2009) ............................................ 9

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ........................................................................................... 7

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025) .............. 1

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025) .... 1, 4, 6, 11

*Harper v. Charter Communs.*, LLC, No. 2:19-cv-00902 WBS DMC, 2021 U.S. Dist. LEXIS 28747 (E.D. Cal. Feb. 12, 2021) ................................................................. 9

*Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849 (C.D. Cal. 2024) ............................. 12

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ......................................................................................... 10

*Huynh v. Chase Manhattan Bank*,
465 F.3d 992 (9th Cir. 2006) .................................................................................. 7

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ......................................................................... 3, 4, 10

*In re Facebook, Inc.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................................. 11

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) .................................................................................... 4

*In re Meta Pixel Tax Filing Cases*,
   793 F. Supp. 3d 1147 (N.D. Cal. 2025) (Pitts, J.) ................................................... 14

*In re Nickelodeon Consumer Privacy Litig.*,
   827 F.3d 262 (3d Cir. 2016) ................................................................................... 11

*In re Orchid Child Prods. LLC*, Nos. 2:20-bk-21080-RK, 2:21-ap-01212-RK, 2024
   Bankr. LEXIS 962 (Bankr. C.D. Cal. Apr. 22, 2024) ................................................ 9

*In re Vizio, Inc.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) .................................................................. 11

*In re Zynga Privacy Litig.,* 750 F.3d 1098 (9th Cir. 2014) .............................................. 12

*Katz-Lacabe v. Oracle Am., Inc.*,
   668 F. Supp. 3d 928 (N.D. Cal. 2023) .................................................................... 12

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ............................................... 6

*Lantzy v. Centex Homes*, 31 Cal. 4th 363 (2003) .................................................... 9, 10

*McDonald v. Antelope Valley Cmty. Coll. Dist.*, 194 P.3d 1026 (Cal. 2008) .............. 8, 9

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) ........................................................... 6

*Pemberton v. Rest. Brands Int'l, Inc.*,
   No. 25-cv-03647-JSC, 2025 U.S. Dist. LEXIS 230964 (N.D. Cal. Nov. 24, 2025) ................. 6

*Popa v. Microsoft Corp.*,
   No. 24-14, 2025 U.S. App. LEXIS 21946 (9th Cir. Aug. 26, 2025) ........................................ 5

*Rabin v. Google LLC*,
   725 F. Supp. 3d 1028 (N.D. Cal. Mar. 26, 2024) ...................................................... 7

*Shah v. Fandom, Inc.*,
   754 F. Supp. 3d 924 (N.D. Cal. 2024) ..................................................................... 13

*Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-PCP, 2026 U.S. Dist. LEXIS 15193 (N.D.
   Cal. Jan. 27, 2026) ..................................................................................................... 5

*Six v. IQ Data Int'l, Inc.*,
   129 F.4th 630 (9th Cir. 2025) .................................................................................... 3

*Smith v. Google, LLC*, 735 F. Supp. 3d 1188 (N.D. Cal. 2024) ....................................... 6

*Spokeo Inc. v. Robins*,
   578 U.S. 330 (2016) ................................................................................................... 3

*St. Aubin v. Carbon Health Techs., Inc.*,
   No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) ................. 12

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ................................................................................................... 3

*United States v. McGee*,
   993 F.2d 184 (9th Cir. 1993) ..................................................................................... 7

*Van Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2010) ..................................................................................... 7

*Walsh v. Dollar Tree Stores, Inc.*,
   No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652 (N.D. Cal. Oct. 16, 2025) ...... 4, 6, 10

*Wiley v. Universal Music Grp., Inc.*, No. 25-cv-03095-PCP, 2025 LX 594493 (N.D. Cal.
   Dec. 17, 2025) ............................................................................................................ 7

**Statutes**

Cal. Penal Code § 631(a) ...................................................................................... 11, 13

Cal. Penal Code § 638.50(b) .......................................................................................... 13
Cal. Penal Code § 638.51 .............................................................................................. 13
**Rules**
Fed. R. Civ. P. 12(b)(6) .................................................................................................... 3
Fed. R. Civ. P. 8 ............................................................................................................. 14
Fed. R. Civ. P. 9(b) .......................................................................................................... 5

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – CASE NO. 3:26-CV-00739-JD

## I.    INTRODUCTION

Plaintiffs Michael Winston and David Buehler ("Plaintiffs") bring this class action suit against Safelite Group, Inc. ("Defendant" or "Safelite") for intentionally aiding third parties in the collection of Plaintiffs' and other users' private information *against those website users' express instructions*, and in violation of Defendant's *express promise not to do so*. In particular, Defendant surreptitiously placed third-party tracking cookies on Plaintiffs' devices *after* they explicitly rejected such cookies by clicking the option to reject "Targeting Cookies" on Defendant's website.

As a result, Defendant enabled the third parties to collect large swaths of Plaintiffs' data, including, without limitation, "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data," despite Defendant's explicit representation that it would disable such transmissions. Plaintiffs have properly asserted claims to hold Defendant liable for such misconduct. *See Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *21–22 (N.D. Cal. July 14, 2025) (denying motion to dismiss alleging defendant's website violated privacy laws by using tracking cookies after expressly promising it would not do so); *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *21 (N.D. Cal. 2025 Aug. 29, 2025) (same).

Defendant attempts to avoid liability by rehashing arguments this Court recently considered and rejected in *Echeverria-Corzan v. Torrid LLC*, 25-cv-06926-JD. Indeed, Defendant is represented by the same counsel that represented Torrid and advances many of the same arguments here. First, Defendant argues that Plaintiffs lack standing to sue. But the privacy harms alleged here are concrete under Article III because they are identical or similar to traditionally recognized harms such as invasion of privacy. The Complaint further adequately alleges that Plaintiffs had a reasonable expectation of privacy and that Safelite's invasion of privacy was highly offensive. Plaintiffs have also adequately and timely pled their claims for CIPA violations, fraud, and unjust enrichment.

In sum, the Court should deny Defendant's motion.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – CASE NO. 3:26-CV-00739-JD

## II.    STATEMENT OF FACTS

When consumers visit Defendant's website (www.safelite.com, the "Website"), Defendant displays a pop-up cookie banner (depicted below) in which it offers Website users the option to adjust the Website's "Cookie settings" (and thus how the consumers are tracked and how their personal data is used) by clicking or selecting the link to do so, as shown in the following screenshot:

We use cookies to enhance your experience.    ✕
Cookie settings

ECF No. 1 ("Compl.") ¶ 1.

Website users, including Plaintiffs, who clicked or selected the "Cookies settings" link were then directed to Defendant's "Privacy Preferences" window. *Id.* ¶ 37, 123, 133. There, Defendant represented that users could "choose not to allow certain types of cookies[,]" including "Targeting Cookies" (which were described on a screen that provided users the option to accept or decline these types of cookies). *Id.* ¶ 37, 124, 134.[1]

Each Plaintiff adjusted the available settings to decline or reject all Targeting Cookies, thereby indicating their choice and/or agreement to decline or reject all such cookies and tracking technologies in use on the Website, clicked or selected the "Confirm My Choices" button, and proceeded to browse the Website. *Id.* ¶¶ 38, 125, 135.

Despite its representations that users could choose to reject "Targeting Cookies," Defendant surreptitiously causes several third parties—including Meta Platforms, Inc. (Facebook), Google LLC, Microsoft Corp. (Bing), and many more (the "Third Parties")—to place and/or transmit cookies that track users' website browsing activities and eavesdrop on users' private communications on the Website. *Id.* ¶ 3. Defendant thereby caused the collection and dissemination of users' personal information, "including browsing history, visit history, website

---

[1] Plaintiffs refer the Court to Paragraph 37 of their Complaint for screenshots of the Website user interface.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – CASE NO. 3:26-CV-00739-JD

interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data[]" (collectively "Private Communications"), to the Third Parties. *Id.* ¶¶ 4, 30.

The Third Parties use the personal information to profile users and target them with advertising for the Third Parties' own financial gain. *Id.* ¶¶ 5, 35, 51–63, 64–80. This is the exact type of tracking and data sharing that Plaintiffs and other Website users sought to avoid.

## III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). And the allegations need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

## IV.    ARGUMENT

### A.    Plaintiffs Plead a Concrete Injury.

Plaintiffs have standing under Article III because they allege a "concrete" injury, which is one that is "real" as opposed to "abstract," or hypothetical. *See Spokeo Inc. v. Robins*, 578 U.S. 330, 340 (2016). Alleged intangible harms are concrete if they have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," and invasions of privacy (such as disclosure of private information and intrusion upon seclusion) have long been recognized at common law as concrete injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *accord Six v. IQ Data Int'l, Inc.*, 129 F.4th 630, 634 (9th Cir. 2025) (the alleged injury must simply be similar in kind to a traditionally recognized harm, such as intrusion upon seclusion). A right to privacy "encompass[es] the individual's control of information concerning his or her person." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (citation omitted). The California Invasion of Privacy Act (CIPA) was "intended to protect these historical privacy rights." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020).

Accordingly, internet users, such as Plaintiffs, who allege that their data was collected in violation of an expectation of privacy have "standing to bring claims for invasion of privacy, intrusion upon seclusion, as well as claims under . . . CIPA, because they adequately alleged privacy harms." *Id.* at 598–99; *accord In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization.").

Here, Plaintiffs allege they suffered concrete harm and that Defendant's conduct was highly offensive because: (a) Defendant *expressly represented* that Plaintiffs could reject cookies, Plaintiffs affirmatively chose to reject the cookies at issue, and Defendant surreptitiously placed third-party tracking cookies on Plaintiffs' devices *after* they explicitly rejected such cookies; and (b) Defendant thereby enabled the third parties to collect *large swaths* of Plaintiffs' data, including, without limitation, "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data," despite Defendant's explicit representation that it would disable such transmissions. *See* Compl. ¶¶ 1–6, 29–113, 121–129, 131–139. And, like in *In re Facebook*, the tracking continues across websites and across multiple browsing sessions, for the purpose of compiling extensive user profiles. Compl. ¶¶ 27, 29, 31, 46. These allegations set forth a concrete harm to Plaintiffs' privacy interests that are similar in kind to traditionally recognized harms (indeed, their claims for invasion of privacy and intrusion upon seclusion are historically recognized causes of action). *See In re Facebook*, 956 F.3d at 598–99. Courts in this District have repeatedly found standing in cases involving substantially the same alleged conduct. *See, e.g., Motorola*, 2025 U.S. Dist. LEXIS 133836, at *16–17 ("Gabrielli's allegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."); *accord Haleon*, 2025 U.S. Dist. LEXIS 169503, at *15 (same); *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652, at *29 (N.D. Cal. Oct. 16, 2025) (same). This Court recently found standing in a case with

- 4 -

substantially similar allegations. *See* Thairani Decl. Ex. A (*Echeverria-Corzan v. Torrid LLC*, No. 3:25-cv-06926-JD, Minute Order (ECF No. 35), 2/26/2026).

In arguing that the data at issue was not sensitive enough and Defendant's conduct was not offensive enough to constitute an injury under Article III (ECF No. 14 ("MTD") at 10–11), Defendant both (a) ignores the directly applicable cases discussed above and (b) relies entirely on distinguishable cases, where there were no affirmative assurances by the defendants that users could reject tracking technologies and where the plaintiffs had not expressly rejected cookies. Most notably, in *Popa*, the Ninth Circuit reiterated that courts "assess whether 'plaintiffs have identified a close historical or common-law analogue for their asserted injury,'" and found no need to revisit the conclusions reached in *In re Facebook* and *Eichenberger*. *See Popa v. Microsoft Corp.*, No. 24-14, 2025 U.S. App. LEXIS 21946, at *23–24 (9th Cir. Aug. 26, 2025) (confirming that the decision in *In re Facebook* properly "accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries," while cautioning against an overly expansive reading of that case). In *Popa*, the defendant did not seek plaintiff's consent, create an expectation of privacy, and then defy plaintiff's rejection of the software. Moreover, the session replay software in *Popa* was limited to collecting data about the use of a single website for the defendant's *own use*. 2025 U.S. App. LEXIS 21946, at *3–5. Here, by contrast, Defendant causes tracking beyond its own website and for the benefit of third parties—who build profiles as in *In re Facebook*—and, even worse, Defendant does so in defiance of its promise not to do exactly that. Compl. ¶¶ 1–6, 44–46, 128, 138. Accordingly, Defendant's Article III argument fails.

**B.      Plaintiffs' Allegations Satisfy Rule 9(b), to the Extent It Applies.**

Defendant contends Rule 9(b) applies to all of Plaintiffs' claims, but courts have rejected that argument. *See Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-PCP, 2026 U.S. Dist. LEXIS 15193, at *25 n.3 (N.D. Cal. Jan. 27, 2026) (rejecting argument that Rule 9(b) applied to the pleading as a whole, rather than just the fraud claim, where plaintiffs' other claims (like the claims here) "focus primarily on privacy-related harms resulting from the information gathering that was enabled by the cookies placed on plaintiffs' devices after they attempted to reject them"); *Smith v.*

*Google, LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024) (finding Rule 9(b) to be inapplicable to wiretapping claims since "Plaintiffs' statutory claims here do not sound in fraud").

In any event, Rule 9(b) is satisfied here. Rule 9(b) requires plaintiffs to plead "'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009). Here, Plaintiffs adequately allege the who (Safelite); the where (the Website and its pop-up screens); the what and the how (that users could "choose not to allow" targeting cookies but then disregarded Plaintiffs' selections and caused such targeting cookies to be installed anyway to assist third parties in intercepting, processing, and collecting Plaintiffs' private communications); and the when (during the class period). Compl. ¶¶ 1–4, 36–42, 121, 123– 129, 131, 133–139. Courts in this district have found Rule 9(b) satisfied by materially identical allegations. *See Motorola*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at \*36–37 ("These allegations satisfy the "who, what, when, and where" of Rule 9(b)."); *Haleon*, 2025 U.S. Dist. LEXIS 169503, at \*36 (per "Fed. R. Civ. 9(b), [Plaintiff's] allegations are sufficient for now."); *Pemberton v. Rest. Brands Int'l, Inc.*, 2025 U.S. Dist. LEXIS 230964, at \*22 (N.D. Cal. Nov. 24, 2025) (quoting *Motorola,* and "finding similar allegations sufficient" to survive a 9(b) challenge); *Dollar Tree*, 2025 U.S. Dist. LEXIS 204652, at \*57 ("Plaintiffs proffer the who, what, when, where and how in their Opposition, citing to portions of the Complaint" in a reject-all cookies case).

Defendant argues that further specificity is required as to the specific timing of Plaintiffs' visits to the Website to provide Defendant with fair notice of Plaintiffs' claims. MTD at 12–13. But Defendant does not need more information at this stage regarding the representations it made on its own Website. Plaintiffs not only allege that they visited "on one or more occasions during the last four years," but also allege the specific representations they saw and selections they made to reject cookies. Compl. ¶¶ 121–26, 131–36. The allegations here plainly "give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Brown*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at \*7 (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted)). That is sufficient at the pleading stage.

*See, e.g., Wiley v. Universal Music Grp., Inc.*, No. 25-cv-03095-PCP, 2025 LX 594493, at *7–8 (N.D. Cal. Dec. 17, 2025) (finding pleading of website visits "on multiple occasions during the last four years" to be adequate). In its attempt to manufacture some uncertainty, Defendant pretends that its Privacy Policy is critical to Plaintiffs' claims and argues that it does not know which version of its Privacy Policy is at issue. MTD at 12–13. But Plaintiffs' claims do not depend on a particular version of Defendant's Privacy Policy and neither Plaintiff alleges that he reviewed or relied on Defendant's Privacy Policy. Statements from the Privacy Policy are quoted in a single paragraph in the Complaint simply to show that *Defendant itself* has acknowledged the use of third-party cookies on the Website. *See* Compl. ¶ 34. There is no substance to Defendant's Rule 9(b) argument.

### C. Plaintiffs' Claims Are Timely.

Where the defendant moves to dismiss a claim as untimely under the applicable statute of limitations, the motion can be granted "only when 'the running of the statute is apparent on the face of the complaint.'" *Van Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)); *see also United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993) (noting complaint need not address statute of limitations raised as affirmative defense). This is because affirmative defenses do not provide a basis for dismissal under Rule 12(b)(6) unless the plaintiff has pleaded himself out of a claim by "admit[ing] all the ingredients of an impenetrable defense," *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.8 (9th Cir. 2018), meaning that the plaintiff's pleaded facts demonstrate no "potential factual dispute that could affect whether the defense applies," *Rabin v. Google LLC*, 725 F. Supp. 3d 1028, 1031 (N.D. Cal. Mar. 26, 2024). But here, the allegations in the Complaint do not establish that any of Plaintiffs' claims are untimely.

First, Plaintiffs' claims did not accrue at the time of their visits to the Website. Rather, California's discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Beheshta Mahboob v. Educ. Credit Mgmt. Corp.*, No. LA CV21-08585-JAK-GJS, 2023 U.S. Dist. LEXIS 245751, at *40 (C.D. Cal. Dec. 20, 2023) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005)). Plaintiffs allege:

(a) Defendant affirmatively misrepresented to website visitors that users could "choose not to allow certain types of cookies[,]" such as "Targeting Cookies" (Compl. ¶ 37, 124, 134); and (b) Plaintiffs did not have a reason or the ability to discover the violations at the time of their visits because they do not know how the Website is programmed and determining whether Defendant is placing unauthorized cookies and transmitting data to third parties requires specialized software developer training (Compl. ¶¶ 15, 22, 130, 140). Thus, Plaintiffs' claims did not accrue until they later learned of Defendant's misconduct through counsel.[2] *See Doe v. Fullstory*, 712 F. Supp. 3d 1244, 1255–56 (N.D. Cal. 2024) (discovery rule applied where plaintiff alleged that defendant had exclusive knowledge of its platform, and the highly technical nature of the violation all but ensured that Plaintiff could not discover the violation at all).

In the Complaint, Plaintiff Buehler acknowledges that he discovered the basis of his claims by February 9, 2024, when he sent a demand letter. However, the limitations periods applicable to his claims were further tolled by California's equitable tolling doctrine while Buehler pursued an initial demand letter and then a ruling in arbitration. Compl. ¶¶ 16–22. California law determines whether the limitations period for his CIPA claim was tolled. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (noting "we borrow our rules for equitable tolling of the period from the forum state, California" and that tolling rules are "liberally applied"). The doctrine is designed to preserve fairness and prevent "technical forfeitures" of a claim "when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 194 P.3d 1026, 1031 (Cal. 2008) (quotation marks and citation omitted). Tolling applies when three elements are met: (1) plaintiff provides timely notice of the claim to defendant; (2) the defendant suffers no prejudice from the delay; and (3) reasonable and good faith conduct by the plaintiff. *Id.* at 1033.

Equitable tolling is typically appropriate, where, as here, "an injured person has several legal remedies and, reasonably and in good faith, pursues one." *McDonald*, 194 P.3d at 1031. This

---

[2] Plaintiffs do not allege specifically when they discovered Defendant's misconduct. If the Court requires them to do so, Plaintiffs can identify the time periods when they learned of the misconduct (around December 2025 or January 2026 for Winston and January 2024 for Buehler).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – CASE NO. 3:26-CV-00739-JD

extends "even to the *voluntary* pursuit of alternate remedies." *Id.* at 1032. Indeed, courts routinely hold that an arbitration proceeding tolls any relevant statute of limitations. *E.g.*, *Fanucci v. Allstate Ins. Co.*, 638 F. Supp. 2d 1125, 1137–38 (N.D. Cal. 2009) ("Even if completion of the arbitration were not deemed mandatory for purposes of automatic tolling under *McDonald*, the Court would still find tolling appropriate . . ."); *Harper v. Charter Communs.*, LLC, No. 2:19-cv-00902 WBS DMC, 2021 U.S. Dist. LEXIS 28747, at *15 (E.D. Cal. Feb. 12, 2021) (tolling statute of limitations period during pendency of an arbitration where the plaintiff asked the arbitrator to resolve threshold arbitrability issues); *see also In re Orchid Child Prods. LLC*, Nos. 2:20-bk-21080-RK, 2:21-ap-01212-RK, 2024 Bankr. LEXIS 962, at *9 (Bankr. C.D. Cal. Apr. 22, 2024) ("[E]quitable tolling may apply to arbitration proceedings.").

Most critically, "the effect of equitable tolling is that the limitations period *stops running* during the tolling event, and begins to run again only when the tolling event has concluded." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (2003). "As a consequence, the tolled interval, *no matter when it took place*, is tacked onto the end of the limitations period, thus extending the deadline for suit *by the entire length of time during which the tolling event previously occurred*." *Id.* at 370–71 (emphasis added). The Complaint in this action was filed 714 days after Plaintiff Buehler's demand letter of February 9, 2024. However, the 467 days between the demand letter (2/9/2024) and the resolution of the arbitration (5/21/2025) should not count under California's equitable tolling doctrine and thus his CIPA claims are timely. Even if the Court credits only 60 days for the demand letter (or some reasonable period for the parties to have attempted to resolve Buehler's claims) and 308 days for the arbitration (the time from the filing of the arbitration demand to the resolution), only 346 days would have elapsed between February 9, 2024, and the filing of the Complaint. That still would not establish Defendant's statute-of-limitations defense, as to any of Buehler's claims, based solely on the pleading.

Moreover, Defendant's suggestion that any delay at all following the conclusion of the arbitration precludes the application of the equitable tolling doctrine is inconsistent with California's liberal equitable tolling, as applied by the California Supreme Court and the Ninth Circuit. *See Lantzy*, 31 Cal. 4th at 370–71 & n.5 (emphasizing that a suit need not be filed

immediately after the conclusion of the tolling event and noting a case where a case was timely filed years after the tolling event); *see also Cervantes*, 5 F.3d at 1274, 1276–77 (holding that the district court erred in dismissing the claim based on a one-year statute of limitations where the plaintiff initially pursued various other proceedings for two and a half years, and then filed his lawsuit about *seven months* after the conclusion of those proceedings). In any event, where Plaintiffs allege facts to support equitable tolling, "equitable tolling is not properly resolved at the pleading stage." *Cervantes*, 5 F.3d at 1277.

### D.   Plaintiffs Adequately Plead Common Law Privacy Claims.

California's common law invasion of privacy and intrusion upon seclusion are analyzed together and require that Plaintiffs show: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook*, 956 F.3d at 606; *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285–97 (2009). Plaintiffs plainly allege both elements.

Defendant argues that Plaintiffs could not have had a reasonable expectation of privacy in mere browsing activity. MTD at 18. But Plaintiffs allege much more than that: they allege that Defendant knowingly assisted *third parties* in collecting large swaths of their data and communications—including "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data"—*after specifically representing* to Plaintiffs that they could browse the Website *without* their data and communications being shared with third parties. Compl. ¶¶ 1–6, 36–42, 45, 152–56, 163–66.

Given Defendant's *own representations* and the scope of the violation of those representations, Plaintiffs plausibly allege that they had a reasonable expectation of privacy and that Defendant's conduct was highly offensive. *See* Thairani Decl. Ex. A (finding plaintiff "plausibly alleged that the disclosure of her personal information, especially after she rejected Torrid's cookies, could be considered highly offensive" and that "[t]he determination of offensiveness is also better made on a fully developed evidentiary record"); *Dollar Tree*, 2025 U.S. Dist. LEXIS 204652, at *37–39 (finding plaintiffs plausibly alleged that (a) "Dollar Tree *itself*

creates a reasonable expectation of privacy when it presents customers with a Cookie Banner permitting them to 'Reject Advertising Cookies'" and (b) the collection of plaintiffs' browsing history, user input data, and geolocation data constituted highly offensive conduct, "considering the 'plus factor' of alleged deceit on the part of Dollar Tree in collecting such information via the Cookie Banner"); *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *23 (court could not conclude on a motion to dismiss that the "alleged transmission via stored cookies of [plaintiff's] browsing data, visit history, website interactions, geolocation information, user input data (including search terms), and other types of data is not a highly offensive invasion of his reasonable privacy expectation"); *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *27 (same); *see also Brown v. Google LLC*, 685 F. Supp. 3d 909, 937–39 (N.D. Cal. 2023) (Google itself "told users that they could 'go Incognito' and 'browse privately,'" and thus "[b]y browsing privately, plaintiffs could be said to have asserted their expectation of privacy"); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 630 (N.D. Cal. 2021) (finding plaintiffs "had a reasonable expectation of privacy in the data allegedly collected" based on defendant's own representations that it would not receive such data).

None of Defendant's cases (MTD at 18) are on point because none of them address a situation where the defendant enabled third parties to collect a user's data in violation of an *express assurance that such data would not be shared*. Even "more routine data collection practices may be highly offensive if a defendant disregards consumers' privacy choices while simultaneously 'h[olding] itself out as respecting' them." *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 292 (3d Cir. 2016)). Moreover, "'courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is.'" *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *26 (quoting *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019)).

### E.    Plaintiffs Adequately Allege Violations of CIPA § 631(a).

Plaintiffs allege a claim under the fourth clause of Section 631(a). That clause imposes liability on Defendant to the extent it aided, agreed with, or conspired with third parties to eavesdrop on (attempt to learn the contents of) Plaintiffs' communications, and/or to use or communicate information obtained as a result of eavesdropping. Cal. Penal Code § 631(a).

- 11 -

With respect to the contents of their communications, Plaintiffs allege third parties obtained their interests, preferences, behavior, and user input data (such as search queries and her personal information) as they used the Website. Compl. ¶¶ 30 (describing user input data), 45 (user input data was transmitted), 59 (Facebook cookies collect, *inter alia*, user input data), 89 (TikTok cookies collect, *inter alia*, user input data). Plaintiff Buehler further alleges he visited the Website "to obtain pricing information for repairing a chip in his automobile's windshield at one of Defendant's service locations." *Id.* ¶ 132. Despite these allegations, Defendant asks this Court to dismiss Plaintiffs' CIPA claims simply because they do not allege specific information that they typed into a field on the Website. MTD at 19–20. But Defendant cannot so easily override Plaintiffs' allegations that the contents of communications were intercepted. *See Haleon*, 2025 U.S. Dist. LEXIS 169503, at *31 (holding "contents" of communication were sufficiently alleged when plaintiff "identifies the information collected as 'the Website user's affirmative decisions, actions, choices [and] preferences,' including 'user input data' such as 'search queries, the user's name, age, gender, email address, location, and/or payment information'"); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 859 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."); *In re Zynga Privacy Litig.,* 750 F.3d 1098, 1108–09 (9th Cir. 2014) (URL data can contain contents of communications); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *11 (N.D. Cal. Oct. 1, 2024) ("Descriptive URLs that reveal specific information about a user's queries reflect the 'contents' of a communication."); *Brown*, 685 F. Supp. 3d at 936 ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" can constitute content); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944–45 (N.D. Cal. 2023) (finding allegations regarding user input data to sufficiently allege contents of communications).

Plaintiffs also clearly allege that their communications were intercepted in transit. Compl. ¶¶ 4 (the cookies "permitted the Third Parties to track and collect data in real time"), 42 (the cookies enabled third parties "to collect user data in real time that discloses Website visitors' Private Communications"), 44 (interactions with the Website resulted in the user's browser making a large number of GET and POST HTTP requests to third party web domains), 183 (third parties

"read, attempted to read, and/or learned the contents or meaning of electronic communications . . . while the electronic communications were in transit"). Plaintiffs further identify specific examples of cookies transmitting data in *real time*. Compl. ¶¶ 51–114 (including screenshots showing network traffic that occurs after a user rejects all cookies using the Website's cookie banner and proceeds to browse the Website). Thus, Defendant's contention that Plaintiffs "fail to plead facts showing that the contents of their communications were intercepted while in transit" (MTD at 20) must be rejected. *See* Thairani Decl. Ex. A (finding plaintiff "has plausibly alleged that the third-parties learn the 'contents' of her communications 'in transit' when they obtain her user input data in real time"); *see also Doe v. Tenet Healthcare Corp*., 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) ("[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement."); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023) (plaintiff sufficiently alleged that the interception occurs "contemporaneous[ly] with the sending or receipt of the message").

### F.      Plaintiffs Adequately Allege Violations of CIPA § 638.51.

In their fourth cause of action, Plaintiffs allege that Defendant's conduct violates CIPA section 638.51, which prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." Compl. ¶¶ 191–201. Under CIPA, a "pen register" is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). "Based on the expansive statutory definition of a pen register, tracking software could plausibly constitute a pen register under §§ 638.50 and 638.51." *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024) (internal quotation marks and citation omitted). Plaintiffs allege that the Third Party cookies and the corresponding software code installed by Defendant on its Website operate as pen registers under the meaning of the statute because they record users' IP address and user-agent information, which is "routing, addressing, or signaling information." Compl. ¶¶ 194–195.

Defendant argues that Plaintiffs plead themselves out of a pen register claim by alleging the cookies and pixels identified in the Complaint capture "contents" of communications. According to Defendant, CIPA forecloses the possibility that a device can operate both as a wiretap (recording contents) and a pen register (recording routing information).

First, the Complaint does not allege that *every* third-party cookie at issue eavesdrops on the contents of private communications in all cases, so Defendant's argument is based on speculation and over-generalization, not actual allegations. Second, Defendant's arguments also fail to recognize that a "pen register" is defined as a "device **or process** that records or decodes [certain types of information]." Cal. Penal Code § 638.50(b). Accordingly, the aspect or "process" of a tracking technology that records or decodes routing, addressing, or signaling information can qualify as a "pen register" independently of whether some other process associated with the technology intercepts and processes contents of Plaintiffs' communications. Third, even if many of the cookies at issue intercept both contents and signaling information, that does not mean they cannot be pen registers. *See In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153–54 (N.D. Cal. 2025) (Pitts, J.) ("Given CIPA's purpose to protect Californians' privacy, it is highly unlikely that the Legislature intended to permit the installation and use of pen registers so long as those devices also record the contents of a third party's communications."); *accord Haleon*, 2025 U.S. Dist. LEXIS 169503, at *31. The caveat that pen registers do not record the contents of communications is most reasonably interpreted to mean that devices that *only* record the contents of communications are not pen registers. Finally, Plaintiffs are allowed to plead their wiretapping and pen register claims in the alternative under Federal Rule of Civil Procedure 8. That is, even if the interception of "content" would remove some or many cookies from the pen register claim, Plaintiffs are allowed to plead in the alternative, such that, if it turns out a specific software device or process is not a wiretap, it may be a pen register.

### G.     Plaintiffs' Unjust Enrichment Claim May Proceed.

"Courts in this District have regularly held that even if plaintiffs have suffered no economic loss from the disclosure of their plausibly private information, they are allowed to proceed through the pleadings stage with a claim for unjust enrichment to recover the gains that a defendant realized

from its allegedly improper conduct." *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *41. Here, Plaintiffs have adequately alleged that it would be unjust for Defendant to retain the benefit of invading Plaintiffs' and Class members' privacy and any profits earned thereon. Compl. ¶¶ 214–23.

## V.      CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's motion to dismiss. In the alternative, Plaintiffs request leave to amend to correct any defects the Court identifies. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990).

Dated: April 22, 2026

**GUTRIDE SAFIER LLP**

*/s/ Seth A. Safier*
Seth A. Safier (State Bar No. 197427)
 seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
 marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
 todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*